**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MISSOURI
AT KANSAS CITY**

RECEIVED

2024 MAR 18 PM 3: 27

CLERK U.S. DIST. COURT
WEST DIST. OF MO
KANSAS CITY, MO

JAMES C. DAY,

     Plaintiff,

                    Case No.:       24-cv-190-BCW

v.

F. COULTER DeVRIES, et al,

     Defendants.

## <u>COMPLAINT</u>

Plaintiff, James C. Day, for his cause of action against the defendants alleges and states as follows:

1. Plaintiff James C. Day is a citizen of the United States and the State of Florida who resides in the State of Florida.

2. Defendant F. Coulter DeVries is a citizen of the United States and the State of Kansas who resides in the State of Kansas.

3. Defendant B. Janeen DeVries is a citizen of the United States and the State of Kansas who resides in the State of Kansas.

4. Defendant Daniel Jones is a citizen of the United States and the State of Missouri who resides in the State of Missouri.

5. Defendant DeVries and Associates, P.C., is a Missouri professional corporation incorporated in the State of Missouri and with its principal place of business in the State of Missouri, deeming it a citizen of the State of Missouri pursuant to 28 U.S.C. Statute 1332(c)(1).

6. There is complete diversity of parties, and plaintiff seeks an amount that exceeds $75,000, giving this Court original jurisdiction over the action and making subject matter jurisdiction proper pursuant to 28 U.S.C. Statute 1332.

7. Pursuant to 28 U.S.C. Statute 1391(b), venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims alleged occurred in this judicial district and/or because a substantial part of the property that is the subject of the action is situated in this judicial district.

8. Plaintiff can support all claims and allegations with documents and other evidence and states a claim upon which relief can be granted.

9. Plaintiff's claims are brought within all applicable statutes of limitations because the claims are based on intrinsic fraud on the court and because no statute of limitations applies to such fraud on the court.

10. On or about September 17, 1998, plaintiff first met with Defendant B. Janeen DeVries and then retained all defendants to provide legal services to him and to his wholly owned Kansas corporation, Day Advertising, Inc., to represent him and his company in a dispute against a former company employee, Eric Johnson, and to enforce the terms of a non-compete agreement of Johnson.

11. The dispute with Eric Johnson also peripherally involved the sale of an automobile to Johnson that was secured by a promissory note and a replevin action to recover possession of the automobile.

12. The original promissory note that Johnson signed to secure payment for the automobile was stolen, and all

3

electronically stored copies of it were deleted from plaintiff's company's computer.

13. Plaintiff told Defendants F. Coulter DeVries and Jones that all versions and copies of the original note were missing in their initial meeting; nevertheless, Defendants F. Coulter DeVries and Jones had plaintiff attempt to locate an electronically stored copy on plaintiff's company's computer system or other copy, and defendants' September 18, 1998, letter of engagement with plaintiff requested plaintiff bring defendants the original document if he found the original document.

14. As part of defendants' representation of plaintiff, defendants filed a meritless and ultimately unsuccessful antitrust action in Kansas against Johnson to waste plaintiff's attorneys' fees by needlessly going to court multiple times between September 19, 1998 and October 6, 1998 without any reasonable possibility of success.

15. After plaintiff expressed displeasure with defendants' fruitless waste of time, Defendants F. Coulter DeVries and Jones met with plaintiff and suggested to plaintiff that

4

they repossess the automobile from Johnson through a replevin action so that Johnson would be unable to drive anywhere to work.

16. Plaintiff was unable to locate an electronically stored copy of the note because all copies of it had been erased, so he attempted to recreate from memory at Defendants F. Coulter DeVries's and Jones's request the promissory note to replace the original note that was stolen.

17. On September 23, 1998 Defendant Jones spent over six hours at plaintiff's office interviewing plaintiff's employees who all verified that the original document and all electronic copies were missing.

18. Plaintiff recreated the note from memory to the best of his ability and provided it to defendants by giving it to Defendant Jones; plaintiff shortly thereafter remembered additional terms contained in the note, so plaintiff made a second version and presented it to Defendant Jones, too, expressly telling defendants that the notes that he gave them had been re-created by memory to the best of plaintiff's ability.

19. Defendants presented one of the re-created notes to the Johnson County, Kansas District Court and affirmatively represented to the court that the document presented to it was an exact, electronically stored copy of the original that had been signed by Johnson and that it was identical to the one that Johnson signed.

20. Defendants lied to the Johnson County Court and knew that the document, which they represented to that court was an electronic copy of the original, could not have been a copy of the original because defendants knew that the original and all electronic copies of it had been stolen or deleted, because defendants' letter of engagement with plaintiff requested plaintiff bring defendants the original document if he found the original document, because Defendant Jones spent hours at plaintiff's office interviewing plaintiff's employees who all verified that the original document and all electronic copies were missing, and because plaintiff had provided defendants with two different versions of the document, both of

which could not be originals due to the obvious differences between the two.

21. The Johnson County Court initially granted defendants the replevin relief that they sought for plaintiff based on the re-created note by ordering the return of the vehicle to plaintiff; and defendants thereby obtained an Order in a related matter based on facts and evidence that they knew or had reason to know to be false.

22. Johnson and his attorney obtained *ex parte* relief in response to the replevin order, including the ability to go to plaintiff's company's office on October 13, 1998 to search its computer files, by demonstrating to the Johnson County Court that the court had granted relief based on fraudulent misrepresentations to the court by defendants herein, which exposed defendants' fraud and panicked defendants by putting them on notice of the Johnson County Court's awareness of their actions.

23. On October 14, 1998 after evidence that exposed defendants' duplicity in lying to the Johnson County Court was presented to the Johnson County Court,

Defendants F. Coulter DeVries and Jones told plaintiff that they would assure the Johnson County Court that what happened was the result of miscommunication and persuaded plaintiff to accept responsibility for Defendants F. Coulter DeVries's and Jones's actions by signing a statement that Defendants F. Coulter DeVries and Jones prepared.

24. Defendants F. Coulter DeVries and Jones later altered the statement that plaintiff signed by adding a paragraph that was not there when plaintiff signed it.

25. After plaintiff signed Defendants F. Coulter DeVries's and Jones's statement, defendants withdrew from their representation of plaintiff without plaintiff's permission, and they falsely represented to the Johnson County Court that they could not continue to represent plaintiff based on plaintiff's actions when it was defendants' actions and omissions from which defendants wanted to distance themselves.

26. Defendants refused to go to court on plaintiff's behalf and falsely represented to plaintiff that a court hearing date

had been cancelled when plaintiff said he would attend the hearing on his own without representation.

27. After defendants withdrew from representing plaintiff, they then worked against plaintiff's interest by negotiating a settlement with Johnson, and the settlement that they negotiated was more favorable to Johnson than to plaintiff to whom they owed a legal and fiduciary duty because the settlement voided the non-compete agreement with Johnson and gave Johnson the $10,000 bond that plaintiff had paid.

28. Defendants then harassed plaintiff for several days through Defendant F. Coulter DeVries who stated falsely that plaintiff would not receive a fair hearing because the judge believed that plaintiff lied to his lawyers, that plaintiff would be prosecuted criminally, that plaintiff would "leave the court in handcuffs," and that plaintiff would lose a separate legal action if he did not acquiesce to the settlement until plaintiff felt that he had no alternative but to agree to the negotiated settlement.

29. Defendant B. Janeen DeVries was present and involved in all of defendants' strategy meetings in court.

30. As a result of defendants' actions, fraud on the court, and breach of their professional duties to plaintiff, plaintiff was unable to enforce the terms of the non-compete agreement with Eric Johnson, which caused the demise and complete destruction of Day Advertising, Inc.

31. Plaintiff sued Defendants F. Coulter DeVries and Daniel Jones, and at trial defendants offered false, perjured testimony, and induced the trial court judge, Sandra C. Midkiff, to call plaintiff a liar and to impugn plaintiff's character and integrity in the presence of the jury, thereby violating his procedural due process rights to fair and impartial judge.

32. The trial court in the suit against Defendants F. Coulter and B. Janeen DeVries and Daniel Jones admitted testimony and evidence against plaintiff that should not have been admitted and allowed an inconsistent verdict to stand, further violating plaintiff's procedural due process rights to a fair and impartial jury and trial.

33. All defendants, including Defendant B. Janeen DeVries, were present in court throughout the trial.

34. Plaintiff's suit against Defendants F. Coulter DeVries and Daniel Jones resulted in a verdict in defendants' favor that was procured through fraud.

35. Defendants altered and/or forged portions of the statement that plaintiff signed, thus fabricating evidence, and defendants presented false and perjured testimony to a court.

## KANSAS DISTRICT COURT CASE NO. 21-CV-02146

36. Judge Vratil ruled that the "Rooker-Feldman Doctrine" applied to this case, and she dismissed this case.

37. Plaintiff appealed this ruling, Case No. 22-3107. The appellate court recognized that the lower court judgment was obtained through "Fraud on the Court" and dismissed the appeal "without prejudice" which allows plaintiff to file a new complaint. (Attachment) The court of appeals correctly knew that "Fraud on the Court" results in a court losing "subject matter jurisdiction." Jurisdiction was lost in this case in the trial in 2005, therefore, the judgment for

"Rooker-Feldman Doctrine" is and has been a "Void Judgment" since the original trial in 2005 when the court lost "subject matter jurisdiction."

### FRAUD UPON THE COURT

38. Defendants stated that plaintiff did not tell them that the paper files were stolen from his office and the computer and back up were erased. Plaintiff told defendants the same day, after their first meeting, when he returned to the office and discovered that the paper files were stolen, and the computer and backup had been erased. If it were true that Day did not tell them, then why would defendants spend approximately six hours interviewing employees about stolen files and erased computer files? Also, the day after defendants were retained and prior to their meeting with Judge McAnany, regarding the replevin motion, appellees wrote a letter to the appellant Day that stated, "if you find the original loan document, get it to me immediately."

39. Defendants then recommended that plaintiff repossess the automobile, which would make it difficult for Johnson to do business.

40. Defendants then asked Day to reconstruct the loan document from memory to take to Judge McAnany. Defendants were given two different loan documents, the first did not have a provision allowing Day to repossess the automobile.

41. Day remembered, after giving the appellee's the first reconstructed loan document and included the repossession provision in the second loan document and took it to appellees. This was prior to meeting with Judge McAnany to acquire a replevin order for the automobile.

42. Defendants lied to Judge McAnany, stating that the loan document was "an exact copy" of the one that Johnson had signed. Plaintiff did not know that defendants intended to premeditatedly lie to the judge. Judge McAnany granted the motion for replevin.

43. When Johnson received a copy of the of the reconstructed loan document, he compared it to the original that he had

stolen from Day's office, he and his lawyer then obtained an *exparte* order from the judge to enter Day's office to find the date of the reconstructed loan documents. They easily confirmed that they were reconstructions. Day made no effort to erase or conceal them, he did not realize that defendants had lied to the judge.

44. Plaintiff attended a meeting with defendants at their office, after the *exparte* raid on Day Advertising's office. Plaintiff was told by defendants that they would explain to the judge that there was a miscommunication, which they said, "happens all the time," if plaintiff would sign a statement which they had prepared. Defendants immediately after the statement was signed, withdrew. The next time the plaintiff saw the statement a third paragraph was added stating the opposite of the facts. Appellees knew that plaintiff Day would not have signed the statement had the third paragraph been there.

45. **Appellees committed fraud upon the court by lying about the preceding facts not only to Judge McAnany but also in their depositions and in trial.**

## VIOLATION OF DUE PROCESS

46. Judge Midkiff, the judge that presided over the state trial in 2005 in Kansas City, Mo, repeatedly exhibited bias toward plaintiff; she has denied plaintiff's right to present damages to the jury; seven clients and their termination letters, allowed Eric Johnson's "self-serving" deposition to be read in court knowing that plaintiff would have no opportunity to expose his lies in cross examination. This is a violation of **Due Process**; plaintiff is entitled to confrontation and cross-examination of adverse witness and an **Unbiased Tribunal** pursuant to the 5th and 14th amendments to the Constitution of the United States; this denies "fundamental fairness."

47. Judge Midkiff violated Appellant Day's "due process" by denying him an **unbiased tribunal, the right of confrontation and cross-examination of adverse witnesses, and fundamental fairness.**

## LACK OF STATUTORY AUTHORITY

48. Judge Sandra C. Midkiff allowed Appellees to name expert witnesses after the deadline and allowed them to testify in court. Michael Kelsay, Appellant's expert witness for damages stated that Johnson had taken seven of Appellant's clients and Eric Johnson, in his deposition, stated that he had those seven clients, and they were all the clients he had when he started his business.

49. Judge Midkiff allowed Johnson's self-serving deposition to be read to the jury. Johnson lives approximately 25 minutes away in Kansas, the case was in Missouri. Johnson refused to attend the trial or testify in court. This denied the plaintiff his constitutional due process. Confrontation and Cross-Examination, "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970).

50. Judge Midkiff unsealed a previous lawsuit plaintiff had with Southwestern Bell Yellow Pages. This allowed the

Appellees to repeatedly claim that Appellant had already been paid and was seeking duplicate damages. Judge Midkiff ordered Appellant to not tell the jury about the seven clients stolen in violation of the non-compete signed by Johnson. She also would not allow the seven termination letters to be presented to the jury. **This resulted in the plaintiff having no damages, which helped destroy his case.** The court exceeded its **statutory authority** and has violated **"fundamental fairness."**

51. Judge Midkiff allowed the defendant's lawyer, Dan Church, to continually call Appellant Day a liar to the jury over Appellant's objections. Members of the jury, after the trial, stated that they sided with defendants because plaintiff Day had no credibility. Plaintiff, James Day, did not lie about anything.

## ROOKER-FELDMAN DOCTRINE

52. This doctrine bars Federal Courts from overturning State Court Judgments.

53. Judge Vratil ruled that the Rooker-Feldman Doctrine applied in this case 2-21-cv-02146. Judge Vratil failed to

realize that "fraud on the court" renders the court without "Subject Matter Jurisdiction" which pursuant to federal law results in a "VOID JUDGMENT." The court had no jurisdiction to rule that the "Rooker-Feldman Doctrine" applied to this case.

54. Plaintiff, James Day, filed an appeal in Case No. 22-3107 in 2022. The court of appeals dismissed "Fraud on the Court" without prejudice. They recognized that the court had lost subject matter jurisdiction and therefore the dismissal for the "Rooker-Feldman Doctrine" was a VOID JUDGMENT pursuant to federal law.

## RULE 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE

## VOID JUDGMENT

55. Two of the reasons that subject matter jurisdiction is lost are: Violation of due process and Fraud on the court.

56. *Fraud on the Court Village of Willowbrook,* 37 Ill. App.2d 393, 185 N.E.2d 696 (1962). Appellees have committed fraud, which is documented. Defendants lied in their depositions and in court and altered the "Statement of James Day" after it was signed.

57. *Violation of Due Process- Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019 (1938); *Pure Oil Co. v. City of Northlake*, 10 Ill.2d 241, 245, 140 N.E.2d 289 (1956); *Hallberg v. Goldblatt Bros.*, 363 Ill. 25, 1 N.E.2d 220 (1936); *Rosentiel v. Rosenstiel*, 278 F.Supp. 794 (S.D.N.Y. 1967).

Plaintiff was denied due process, an impartial judge.

58. Void judgments are those rendered by a court which lacked jurisdiction, either of the subject matter or the parties. *Wahl v. Round Valley Bank,* 38 Ariz. 411, 300 P. 955 (1931), *Tube City Mining & Milling Co. v. Otterson*, 16 Ariz. 305, 146 P. 203 (1914); and *Milken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 LEd. 278 (1940).

59. *A void judgment is not entitled to the respect accorded a valid adjudication, but may be entirely disregarded, or declared inoperative by any tribunal in which effect is sought to be given to it. It is attended by none of the consequences of a valid adjudication. It has no legal or binding force or efficacy for any purpose or at any place...It is not entitled to enforcement ... All proceedings*

*founded on the void judgment are themselves regarded as invalid.* **30A Am Jur Judgments "44, 45.**

60. *"If a court grants relief, which under the circumstances it hasn't any authority to grant, its judgment is to that extent void."* **(1 Freeman on Judgments, 120c.)** *"A void judgment is no judgment at all and is without legal effect."* **(Jordan v. Gilligan, 500 F.2d 701, 710 (6th Cir. 1974)** *"a court must vacate any judgment entered in excess of its jurisdiction."* **(Lubben v. Selective Service System Local Bd. No. 27, 453 F.2d 645 (1st Cir. 1972)**.

61. *An order that exceeds the jurisdiction of the court, is void, or voidable, and can be attacked in any proceeding in any court where the validity of the judgment comes into issue.* **(See Rose v. Himely (1808) 4 Cranch 241, 2 L ed 608; Pennoyer v. Neff (1877) 95 US 714, 24 L ed 585; Thompson v. Whitman (1973) 18 Wall 457, 21 I ED 897; Windsor v. McVeigh (1876) 93 US 274, 23 L ed 914; McDonald v. Mabee (1917) 243 US 90, 37 Sct 343, 61 L ed 608. U.S. v. Holtzman, 762 F.2d 720 (9th Cir. 1985)**

62.*Elliott v. Piersol*, 26 U.S. (1 Pet.) 328, 340 (1828), stated under Federal law, which is applicable to all states, that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as **trespassers**." (emphasis added).

63.Black's Law Dictionary, Sixth Edition, page 1574:

defines Void Judgment as follows:

One which has no legal force or effect, the invalidity of which may be asserted by any person whose rights are affected at any time and at any place directly or collaterally. One which, from its inception is and forever continues to be null, without legal efficacy, ineffectual to bind parties or support a right, of no legal force and effect whatever, and incapable of confirmation, ratification, or enforcement in any manner or to any degree. Judgment is a "void judgment" if a court that rendered judgment **lacked jurisdiction of the subject matter,** or of the **parties**, or acted in a manner inconsistent with **due process**.

64. ***When rule providing for relief from void judgments is applicable, relief is not discretionary matter, but is mandatory****, Orner v. Shalala, 30 F.3d 1307, (Colo. 1994.  Judgments entered where court lacked either subject matter or personal jurisdiction, or that were otherwise entered in violation of due process of law, must be set aside, Jaffe and Asher v. Van Brunt, S.D.N.Y. 1994, 158 F.R.D. 278.  A "void" judgment as we all know, grounds no rights, forms no defense to actions taken thereunder, and is vulnerable to any manner of collateral attack (thus here,by).*

65. ***No statute of limitations or repose runs on its holdings, the matters thought to be settled thereby are not res judicatta indicate, and years later, when the memories may have grown dim and rights long been regarded as vested, any disgruntled litigant may reopen the old wound and once more probe its depths.  And it is then as though trial and adjudication had never been****.*

*10/13/58 FRITTS v. KRUGH, SUPREME COURT*

*OF MICHIGAN, 92 n.w.2D 604, 354 Mich. 97.*

**DAMAGES**

66. Damages are being revised through December 31, 2023, they will be submitted to the court when completed. Damages currently, depending on the capitalization rate, range from approximately $3,000,000 to $5,000,000 through December 31, 2013. (Attachment)

**CONCLUSION**

67. Plaintiff has presented documented evidence that defendants premeditatively lied to Judge McAnany, lied at trial in 2005 and altered the "Statement of James Day". In addition, defendants could not deny any of plaintiff's allegations, they relied solely on the "Rooker-Feldman Doctrine" which has been proven to be invalid.

68. This court, pursuant to federal law, is entitled to a new trial.

69. WHEREFORE, Plaintiff prays for judgment against defendants including compensatory damages and interest, in an amount which amount exceeds seventy-five thousand dollars ($75,000.00), and for his costs herein incurred and expended.

PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully,

James C. Day, pro se
5310 88th Street East
Bradenton, FL 34211
(913)208-0164
Jday4718@gmail.com